## (February 28, 1968)

■ In the Matter of JIST REST., INC., Petitioner, 1. NEW YORK STATE LIQUOR AUTHORITY, Respondent. — Proceeding pursuant to CPLR article 78 (1) to annul a determination of the State Liquor Authority, dated January 18, 1968, which cancelled petitioner's restaurant liquor license effective January 25, 1968 and (2) to compel the Authority to process and approve petitioner's application for renewal of its current license for the license period commencing March 1, 1968. Determination annulled, on the law, without costs, and petition granted to the extent that the cancellation of petitioner's license is nullified. No questions of fact were considered. The cancellation of petitioner's license is based upon findings that in obtaining its license petitioner misrepresented that the licensed premises were open and operating at the time of issuance of the license and that the purchase of the subject business was financed in accordance with the information supplied to the Authority in support of the original application. In *Farina* v. *State Liq. Auth.* (20 N Y 2d 484), it was held that where the evidence established that the alleged misrepresentations of the applicant, as to financing of the business, were made in good faith, evinced by the complete candor of the applicant in his dealings with the Authority and without intent to mislead, there was "no room for the exercise of the Authority's discretion" (p. 493). Its action in canceling the license was declared to be arbitrary and capricious. In the case at bar, petitioner's good faith is demonstrated by the lack of evidence that the original financing plans were submitted in bad faith. There was a plausible reason for changing the financial arrangements, to wit: due to financial reverses, one of the original principals, Fred Sarno, was unable to put up his agreed share of the purchase price. Thus, in order to meet the commitments arising out of the contract of sale, the other principal, Richard Schaffer, was compelled to raise the entire $30,000 purchase price on his own. It is undisputed that Schaffer obtained the money from legitimate sources. Petitioner's good faith is further established by the fact that when it was first agreed that Sarno was withdrawing from the transaction entirely, to be replaced by one Harold Gold, Schaffer, on March 6, 1967, deposited the still unused license with the Nassau County ABC Board. Petitioner's complete candor with the Authority is demonstrated by the fact that on March 10, 1967, an application for corporate change, together with a personal history sheet by Harold Gold, in which the changes in corporate principals and in the financing arrangements were disclosed in full, were filed. By letter of May 16, 1967, the Authority acknowledged receipt of these documents and advised petitioner that the corporate change could not be considered until after a pending investigation of petitioner was concluded. Thereafter, Gold and Schaffer went to the offices of the Authority to inquire into the purpose of the pending investigation. It is undisputed that upon this occasion, Deputy Commissioner Reddington advised them that there was "[n]o reason in the world" why the restaurant could not be operating during the pendency of the afore-mentioned investigation. Schaffer thereupon retrieved the license and expended a substantial amount of money in addition to the initial $30,000 investment to prepare the restaurant for its opening. This restaurant has been operating since June 6, 1967. It has hired a chef and a full staff necessary to conduct the business. The weekly gross receipts are approximately $3,500, half of which are attributed to food sales. Finally,

this record discloses no complaints concerning the operation of the licensed premises. Under the special facts and circumstances of this case, the Authority's cancellation of the license should be annulled. Brennan, Benjamin and Munder, JJ., concur; Christ, Acting P. J., dissents and votes to dismiss the proceeding on the merits and to confirm the determination of the Authority, with the following memorandum in which Rabin, J., concurs: By letter dated December 21, 1966, the State Liquor Authority advised petitioner that its application for a restaurant liquor license had been approved, subject, however, to the satisfaction of six conditions precedent, two of which provided: "1. That premises are open and operating. * * * 5. That the financing of the business, including the construction of the proposed premises, is in accordance with information previously supplied in support of the application to the Liquor Authority." When on February 21, 1967, petitioner's secretary-treasurer, Richard Schaffer, picked up the license at the issuing office, he knew that the afore-mentioned conditions had not been satisfied in these respects: the premises were not open and operating; the purchase of the restaurant had not been financed by equal contributions by himself and Fred Sarno (petitioner's president), as had been represented in the application; in fact, it had been financed by Schaffer alone, who had raised the $30,000 purchase price by mortgaging his residential property for $15,000 and obtaining a bank loan for the balance, which loan was collateralized with the bank account of one Harold Gold, who was a complete stranger to the transaction at the time. Thus, Schaffer obtained the license under at least implied misrepresentations. Depending upon the construction placed upon a somewhat cryptic affidavit submitted by him at the time he picked the license up at the issuing office, a finding of express misrepresentation is even supportable. Moreover, the record contains an additional SLA document (renewal application) executed by Schaffer only three days after the license had been obtained. In this instrument petitioner expressly represented that no change in any facts had occurred since the signing of the original application; and it failed to answer a question as to whether the licensed business was open and operating. In these circumstances, it cannot be said that there was not substantial evidence to support a finding that petitioner had misled the Authority in obtaining the license and that the cancellation was arbitrary and capricious. Unlike the situation presented in *Farina* v. *State Liq. Auth.* (20 N Y 2d 484, 493), it is not the present petitioner's "sole transgression * * * that he used certain funds which were not originally contemplated in his application and [that] he failed to report this change [citation omitted] because he was ignorant of the requirement." At the very heart of *Farina* lies the finding that the licensee therein acted in good faith and that his failure to report the financing charges was the product of ignorance. The record here belies petitioner's claim of good faith and ignorance. The majority's conclusion in this case seriously jeopardizes the Authority's supervisory and regulatory responsibilities in regard to the financial, personnel and managerial structure of licensees. We believe the Authority's determination is supportable on this entire record and that it ought to be confirmed.